**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

        **v.**                                    **Civil Action No.  10-2111 (JEB)**

**SPEQTRUM, INC., d/b/a Speqtrum Health**
**Care Services,**

    **Defendant.**

---

**MEMORANDUM OPINION AND ORDER**

        The Government brought this action against Speqtrum, Inc., claiming that Defendant, a

home-health-care provider, had knowingly submitted fraudulent claims to the District of

Columbia's Medicaid Program for services it had not rendered or was not authorized to render.

The Government sought a temporary restraining order and a preliminary injunction under 18

U.S.C. § 1345 to enjoin the disposition of Speqtrum's assets.  On Feb. 7, 2011, Judge Henry

Kennedy, to whom this case was previously assigned, issued an Order granting the

Government's request for a preliminary injunction and ordering that the D.C. Health Care

Finance Department (DCHCFD) not transfer $1.8 million of the $4.5 million in payments

withheld or recouped from Speqtrum without leave of court.

        Defendant has now filed a Motion for the release of attorney fees and costs of almost

$100,000, which request has been opposed by the Government.  Because the Court finds, at least

at present, that Defendant is not entitled to such fees from either the frozen $1.8 million or the

remainder currently in the possession of the DCHCFD, the Court will deny the Motion without

prejudice to be renewed, if appropriate, at a later date.

1

I.      **Analysis**

In seeking the release of monies to pay for attorney fees, Defendant has two potential

sources: the frozen $1.8 million or the $2.7 million still retained by the DCHCFD.  The Court

will address each in turn, ultimately finding that neither is currently available to Defendant.

A.  Frozen Assets

It is not disputed here that the "purpose of freezing assets in this case is to preserve the

status quo and prevent those assets from being dissipated or diverted during the pendency of the

case." United States v. Jamie, 2011 WL 145196, at *1 (S.D.W.Va. 2011).  "The award of

attorneys' fees in such cases is firmly entrusted to the discretion of the district court." Id. (citing

Commodities Futures Trading Comm'n v. Am. Metals Exh. Corp., 991 F.2d 71, 79 (3d Cir.

1993)).  In exercising such discretion, the Court must "balance the government's justification for

restraining property with the defendant's legal interest in a full and fair hearing on the merits."

Id. (internal quotation marks and citation omitted).

On the one hand, "the Government does not violate the Sixth Amendment if it seizes ...

[ill-gotten gains] and refuses to permit the defendant to use them to pay for his defense." Caplin

& Drysdale, Chartered v. United States, 491 U.S. 617, 626 (1989); see also United States v.

American Therapeutic Corp., 797 F. Supp. 2d 1289, 1293-94 (S.D. Fla. 2011) (denying release

of attorney fees in health-care case brought under § 1345 and noting lack of Sixth Amendment

right to counsel for civil litigants); S.E.C. v. Quinn, 997 F.2d 287, 289 (7th Cir. 1993) ("Just as a

bank robber cannot use the loot to wage the best defense money can buy, so a swindler in

securities markets cannot use the victims' assets to hire counsel who will help him retain the

gleanings of crime.") (internal citation and citation omitted).

On the other, the Court has the authority to release frozen funds "in the interest of fundamental fairness if wrongdoing is not yet proven and the restrained property is a defendant's only means of securing counsel." <u>Jamie</u>, 2011 WL 145196, at *1 (citations omitted); <u>United States v. Payment Processing Ctr., LLC</u>, 439 F. Supp. 2d 435, 440-41 (E.D. Pa. 2006) (although Sixth Amendment does not entitle defendant to release of frozen assets, that rationale "does not merit denying a defendant in a § 1345 action a reasonable claim for fees from restrained property upon the appropriate showing before the § 1345 complaint has been resolved on the merits") (footnote omitted).

In making the decision, the Court should assess a defendant's financial ability to fund a defense. <u>See</u> <u>Payment Processing</u>, 439 F. Supp. 2d at 440 (defendant's ability to fund a defense an important factor in determining whether equity favors releasing assets). In <u>Jamie</u>, for example, the Court determined that the defendant had "no other substantial assets to satisfy [its] attorney's submitted fees." <u>Id.</u> at *2. "Requiring defendants to prove an inability to afford counsel before lifting a property restraint is also consistent with the established burden-shifting rules in the context of other asset restraints." <u>Payment Processing</u>, 439 F. Supp. 2d at 441. Here, however, Defendant has submitted no financial records or otherwise demonstrated an inability to pay its counsel. Absent such, even if the Court were inclined to release funds, it would have no basis to do so.

B. <u>Assets Held by DCHCFD</u>

Defendant, alternatively, seeks to access the $2.7 million not frozen by the Court. These funds are still the subject of administrative hearings that have been stayed pending resolution of the current suit. <u>See</u> Reply, Exh. 2 (Order of Office of Administrative Hearings). In fact, it is Defendant who has opposed lifting the stay and who has the power to have it lifted. <u>Id.</u> This

Court is not empowered to release those funds until a final decision has been made at the administrative level.  If, for example, the Office of Administrative Hearings determines Defendant is entitled to some or all of the sums contested, then this whole issue would become moot, as Defendant would have sufficient resources to pay its counsel.  Conversely, were Defendant to lose at the OAH stage, it might have a stronger argument regarding its need to access the frozen funds.  In addition, once those administrative proceedings have been completed, then Defendant may challenge them to the extent it believes that there was error.  See, e.g., NB v. District of Columbia, 800 F. Supp. 2d 51 (D.D.C. 2011) (suit challenging DCHCFD's denial of Medicaid benefits); cf. also Heckler v. Ringer, 466 U.S. 602, 606 (1984) ("Pursuant to her rulemaking authority, the Secretary has provided that a 'final decision' is rendered on a Medicare claim only after the individual claimant has pressed his claim through all designated levels of administrative review.") (internal citation and footnote omitted).  Defendant, therefore, must decide whether it wishes to have the stay lifted and its entitlement to the funds determined.  Until that is accomplished, however, the Court cannot render any assistance.

Defendant cites United States v. Sriram, 147 F. Supp. 2d 914 (N.D. Ill. 2001), as an example of a district court releasing monies outside of the frozen assets.  See Reply at 2.  Yet, Sriram did not deal with sums that were held by a regulatory body or were the subject of administrative proceedings; on the contrary, the funds released were those in the defendant's personal bank account.  See 147 F. Supp. 2d at 916, 949.  It thus provides no support for Defendant's argument.

## II.   Conclusion

The Court, therefore, ORDERS that Defendant's Motion is DENIED WITHOUT PREJUDICE.

4

**IT IS SO ORDERED.**

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: Feb. 16, 2012