## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 10-2111 (JEB)** |
| **SPEQTRUM, INC.,** | |
| **Defendant.** | |

## MEMORANDUM OPINION

The United States brought this False Claims Act case against Defendant Speqtrum, Inc., a home-healthcare agency, for engaging in ongoing fraud in its submissions for Medicaid reimbursements.  In prior Opinions, this Court granted summary judgment in favor of the Government on liability and then held a bench trial on damages on February 16-18, 2016.  After issuing a partial verdict that awarded the United States the lion's share of the amount it was seeking, the Court required post-trial briefing on treble damages, civil penalties, and one issue the Government may have forfeited.  Having now reviewed those submissions, the Court will enter judgment in the sum of $6,151,302.51.

## I.    Background

The Court will not recount the tortuous wending of this litigation, which has now entered its sixth year, nor its complex factual background.  This Opinion will, instead, begin with the decisions resolving the Government's two summary-judgment motions, see United States v. Speqtrum, Inc. (Speqtrum I), 47 F. Supp. 3d 81 (D.D.C. 2014); United States v. Speqtrum, Inc. (Speqtrum II), 113 F. Supp. 3d 238 (D.D.C. 2015), which contain enough detail to satisfy the most curious reader.

As the Court previously explained, "Defendant Speqtrum, Inc., is a home-healthcare agency that furnishes the elderly and disabled with assistance in the day-to-day activities of living, such as bathing, dressing, and taking needed medications.  D.C. Medicaid, which is subsidized by the federal Medicaid program, pays for many of Speqtrum's services for low-income patients."  Speqtrum I, 47 F. Supp. 3d at 83.  The gravamen of the Government's allegations here – all under the FCA − related to Defendant's "overbilling for hours not worked, charging the District for clients it did not service, forging physician signatures on its paperwork, and failing to obtain medical authorization prior to rendering services."  Speqtrum II, 113 F. Supp. 3d at 240.  In its first summary-judgment Opinion on June 13, 2014, the Court concluded that the United States was "entitled to summary judgment as to the allegations of overbilling and charging for services not rendered."  Speqtrum I, 47 F. Supp. 3d at 97.  The Court could not, however, award summary judgment on the issues related to the allegedly false "plans of care" for each patient – which included forged physician signatures and lack of medical authorization – that Speqtrum had used to support its requests for reimbursement.  Id.  The Court, furthermore, did not believe the evidence sufficient to justify any specific damages award at that juncture.

After permitting the Government to file an additional motion for summary judgment on the outstanding issues, the Court held on July 8, 2015, that "the United States has proved that it is entitled to summary judgment on Defendant's liability arising from its plan-of-care deficiencies."  Speqtrum II, 113 F. Supp. 3d at 250.  Once again, however, the Court found the Government's proof on the issue of damages wanting.  Id. at 251.  Following a status conference on August 11, 2015, the Court set a "bench trial relating to damages only" for later that year.  See Minute Order of Aug. 11, 2015.  After the parties sought a continuance, the trial eventually commenced on February 16, 2016.

2

At its conclusion, the Court delivered an oral verdict, explaining that the Government's damages evidence fell into three categories.  The first related to submitted claims that relied on fraudulent or non-existent plans of care – namely, those signed after the dates of service, those not signed by any physician, those containing forged entries, those bearing forged physician signatures, and cases where the plans were missing.  The Court found that the Government had provided sufficient evidence to prevail as to these damages.  See 2/18/16 Tr. at 45.  In addition, the Government had proved damages in a second category of more obvious fraud, which included instances where Speqtrum had billed for more hours than were worked or for clients who did not receive any services or who were deceased at the time.  Id. at 46.

The third category proved trickier.  This related to claims with record-keeping deficiencies, such as instances in which there was no timesheet to support the services billed, no nursing note, or no program-intake assessment.  Id. at 14.  The Court held in abeyance any award of damages in this category because the Government had never obtained summary judgment as to liability on this type of damages before trial.  Id. at 48-50.

At the conclusion of its oral verdict, the Court requested post-trial briefing from the parties on the following questions: 1) Should the Government's claim to the record-keeping damages be deemed forfeited? 2) If the record-keeping damages are segregated out, what is the total amount of damages remaining in the first two categories? 3) Are such remaining damages subject to tripling? 4) What are the appropriate civil penalties to be awarded?  Id. at 46-47.  After considerable delay, the parties have submitted their positions on these issues, and the Court now considers each issue separately, along with Defendant's other arguments.

**II.      Analysis**

A.      Forfeiture of Record-Keeping Damages

In the Court's second summary-judgment Opinion, it observed that "[t]he central thrust of the Government's briefing is that Defendant violated the [FCA] *vis-à-vis* its invoices for services rendered without an operative plan of care."  Speqtrum II, 113 F. Supp. 3d at 245. Before proceeding to an analysis of that topic, however, the Court noted that "Plaintiff's briefing also makes passing mention of amorphous 'recordkeeping' deficiencies.  Insofar as such references are intended to serve as a request for judgment on that conduct, Plaintiff has failed to sufficiently articulate or develop its reasoning."  Id.  While ultimately granting summary judgment on the "plan-of-care transgressions," id. at 251, the Court never found liability on the record-keeping issues.  As the parties then prepared for trial, those latter issues disappeared from everyone's view.  Indeed, in the parties' Joint Pretrial Statement, the Government took the position that "all the facts concerning liability under the FCA are undisputed for the purposes of this trial, and the only issue that remains in dispute is the calculation of damages and civil penalties."  ECF No. 107 at 7; see id. at 10 ("The United States objects to all evidence and witnesses relevant to the question of Speqtrum's liability for the false claims asserted by the United States . . . .") (emphasis added).

Once all the damages evidence had been presented at trial, the Court *sua sponte* raised this issue, pointing out that "summary judgment [was not] granted on liability for deficient record-keeping outside the plans of care.  And it may be unfair, but tell me how you think that I can grant damages here based on that if I never found the defendant liable for it[?]"  2/18/16 Tr. at 16:12-16.  The Court thus asked the Government to explain why it believed it had not forfeited or abandoned its claims related to record-keeping.  Id. at 19:10-22; 20:22-25; cf. Hunt v. City of

Los Angeles, 523 Fed. Appx. 493, 495 (9th Cir. 2013) (unpublished) ("[Plaintiff's] failure to

present this claim at trial constitutes an abandonment of this claim"); United States v. Whitfield,

2016 WL 2587175, at *2 (3d Cir. May 5, 2016) (unpublished) (upholding district court's

determination that "defendants forfeited their selective enforcement claim by failing to raise it

before trial"); Bondex Int'l v. Hartford Accident & Indem. Co., 667 F.3d 669, 681 (6th Cir.

2011) (finding that party forfeited claim "by failing to raise it in any pleadings or at any stage of

the proceedings below"); Jurewicz v. U.S. Dep't of Agriculture, 891 F. Supp. 2d 147, 151

(D.D.C. 2012) ("Plaintiffs forfeited any challenge based on Exemption 3 [in FOIA case] by

ignoring it in their Motion.").

   In its post-trial brief, the Government principally argues that "[i]n order for this Court to

find that the United States waived or forfeited a claim or argument, it must find that the

Government failed to raise the claim in its pleading or in its summary judgment filings."  ECF

No. 119 at 8-9.  Yet such a response miscomprehends the Court's inquiry.  The Court does not

deny that Plaintiff raised the issue at summary judgment; the question is whether the

Government offered proof at trial.

   Plaintiff next argues, in the alternative, that it did sufficiently present liability evidence of

the record-keeping deficiencies during the trial.  Id. at 12-13.  While there may have been

evidence concerning damages relating to these errors, the testimony did not establish the three

prongs required for liability under the FCA.  See Speqtrum II, 113 F. Supp. 3d at 245-50.  Nor

would the Court expect the Government to have offered such proof in what the parties (and

Court) believed to be a damages-only trial.

   The United States last asks the Court to reconsider its prior summary-judgment decision

on record-keeping or to permit further briefing or even an additional trial on the issue.  See ECF

No. 119 at 13-15 & n.3.  Yet that ship has already sailed.  The Court believes it would unfairly prejudice Defendant if the Government were permitted another chance to present its case. Perhaps Speqtrum, too, wishes it had done things differently the first time around.  Particularly as the Government obtains a sizable award here, see Sections II.C, D, *infra*, the Court does not believe the United States ill treated by a decision not to reopen the proceedings for new evidence.

      B.      <u>Amount of Remaining Damages</u>

      The forfeiture debate thus resolved, this next issue is very straightforward.  The Court asked the Government to submit "a spreadsheet of damages modeled on its Exhibit 1, but including only claims related to Plans of Care and overbilling."  Minute Order of Feb. 18, 2016. In other words, this spreadsheet should redact any damages related solely to record-keeping. Plaintiff has complied and submitted the very document sought, which yields a total of $1,330,434.17.  <u>See</u> ECF No. 119-2.  Aside from general complaints about the Court's liability finding, which are discussed in Section II.E., *infra*, Speqtrum does not challenge this sum.  The Court, accordingly, will use it to calculate the final damages amount.

      C.      <u>Treble Damages</u>

      The Government next seeks an award of three times the $1,330,434.17 figure.  Under the FCA, such trebling is mandatory: "[A violator] is liable . . . for a civil penalty . . . plus 3 times the amount of damages which the Government sustains because of the act of that person."  31 U.S.C. § 3729(a)(1); see <u>United States v. Anchor Mortg. Corp.</u>, 711 F.3d 745, 748 (7th Cir. 2013) ("statute requires treble damages").  The only exception involves violators who fully cooperate with a Government investigation, <u>see</u> 31 U.S.C. § 3729(a)(2), clearly not the situation here.  The Court will thus triple the damages figure to reach the sum of $3,991,302.51.

D.    <u>Civil Penalties</u>

In addition to such amount, the United States demands civil penalties, which are also obligatory under the FCA: "[A violator] is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 . . . ."  31 U.S.C. § 3729(a)(1); <u>see</u> <u>United States ex rel. Drakeford v. Tuomey</u>, 792 F.3d 364 (4th Cir. 2015) ("And 'the fact . . . that Congress provided for . . . an automatic civil monetary penalty per false claim shows that Congress believed that making a false claim to the Government is a serious offense.'") (quoting <u>United States v. Mackby</u>, 339 F.3d 1013, 1018 (9th Cir. 2003)).  The range has subsequently been increased to $5,500 to $11,000.  <u>See</u> 64 Fed. Reg. 47099, 47103 (1999).

Before determining where in the range the penalty should fall, the Court must address the multiplier – that is, how many separate false claims is Speqtrum liable for here?  The FCA defines "claim" to include "any request or demand, whether under a contract or otherwise, for money or property . . . that is made to a contractor, grantee, or other recipient . . . if the United States Government provides . . . any portion of the money or property requested or demanded, or will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded."  31 U.S.C. § 3729(b)(2).  As the D.C. Circuit has explained, "Whether a defendant has made one false claim or many is a fact-bound inquiry that focuses on the specific conduct of the defendant."  <u>United States v. Krizek</u>, 111 F.3d 934, 939 (D.C. Cir. 1997).

In <u>Krizek</u>, a similar case dealing with a psychiatrist and his wife's submission of false billing records for insurance reimbursement, the Court of Appeals concluded that "[t]he question turns, not on how the government chooses to process the claim, but on how many times the

defendants made a 'request or demand.'  In this case, the Krizeks made a request or demand every time they submitted" a form listing the services for which reimbursement was sought.  Id. at 940.  In so finding, however, Krizek rejected the notion that every line item identified by a separate reimbursement code constituted a separate claim.  Id.

Following Krizek, the Government here has offered a document showing that Speqtrum "submitted 216 separate and distinct computerized invoices for reimbursement of services that contained the false certifications as defined by this Court's Order."  ECF Nos. 119-1 (Declaration of Idongesit Umo), ¶ 9; 119-3 (spreadsheet documenting 216 invoices with check numbers).  Defendant, moreover, has not offered any rebuttal to this figure, which is fairly conservative as each of the 216 invoices contains multiple entries.  The Court agrees with the Government that this is the appropriate multiplier.

In now determining the amount of the civil penalty to be imposed for each false claim, the Court understands it has discretion within the per-violation range of $5,500 to $11,000.  See Cook County, Ill. v. United States ex rel. Chandler, 538 U.S. 119, 132 (2003).  "Though there is no defined set of criteria by which to assess the proper amount of civil penalties against the defendant, the Court finds that an approach considering the totality of the circumstances, including such factors as the seriousness of the misconduct, the scienter of the defendants, and the amount of damages suffered by the United States as a result of the misconduct is the most appropriate."  United States ex rel. Miller v. Bill Harbert Intern. Const., Inc., 501 F. Supp. 2d 51, 56 (D.D.C. 2007) (footnote omitted); see United States v. Rogan, 459 F. Supp. 2d 692, 727 (N.D. Ill. 2006) ("In determining the appropriate penalty, the court considers the totality of the circumstances, including: the egregiousness of the defendant's conduct, whether the United States suffered any actual damages, other damages that the United States may have incurred, the

8

right of the United States to be made completely whole, and general fairness.") (citations omitted).

As explained in the Court's two prior summary-judgment Opinions, Defendant's conduct here was egregious and willful in its "cooking [of] the books: overbilling for hours not worked, charging the District for clients it did not service, and forging physician signatures on its paperwork." Speqtrum I, 47 F. Supp. 3d at 83. In addition, the loss to the United States was substantial; in fact, the District of Columbia, which is reimbursed by the federal Government, has sought to "recoup over $8 million . . . in District funds implicated by the fraud." Id. at 87. Third, a high figure here is appropriate given that the number of claims submitted (216) understates the seriousness of the conduct because each claim lumps together numerous false acts. See, e.g., United States ex rel. Lamberts v. Stokes, 640 F. Supp. 2d 927, 933 (W.D. Mich. 2009) (maximum penalty appropriate where number of claims sought was low in relation to total number of claims submitted). The Court, accordingly, will award $10,000 for each violation, an amount nearly at the maximum level. The total civil penalty is thus 216 x $10,000 = $2.16 million.

E.    Remaining Arguments

Speqtrum spends little time addressing most of the issues set forth above; instead, as has been its wont throughout the damages phase, it continues to challenge its liability, largely through tangential points. For example, Defendant maintains that a theory central to the Court's prior two Opinions "was overruled by the District of Columbia Circuit's opinion in United States ex re. Purcell v. MWI Corp., 807 F.3d 281 (D.C. Cir. 2015) where the implied certification theory of False Claims Act liability was rejected." ECF No. 123 (Response) at 2 n.1 (mislabeled as footnote 11). On the contrary, that case never even discussed the implied-certification theory

of falsity, instead devoting its attention to the separate prong of the defendant's <u>knowledge</u>.  <u>See</u>
<u>MWI Corp.</u>, 807 F.3d at 287-91.

     Speqtrum next curiously pleads that "the Court [should] not impose any actual damages,
treble damages and/or civil penalties against Defendant in this case" because "[t]his case has
always been an administrative agency case that belonged in the District of Columbia, Office of
Administrative Hearings [OAH] for any judicial review."  Resp. at 2.  Although this Court stayed
the matter on repeated occasions to see if progress would be made at OAH, <u>see, e.g.</u>, Minute
Orders of July 16, 2014, Sept. 25, 2014, Jan. 14, 2015, it ultimately decided to press on.
Defendant's argument appears precatory only, as it never maintains that this Court lacked
jurisdiction.

     In addition, Speqtrum attempts to introduce other liability arguments, asserting, for
example, that certain false claims are actually "administrative overpayment recoupments," Resp.
at 6, whatever that means, and that the Government has never met the "rigors of Federal Rule of
Civil Procedure 9(b) with regard to pleading fraud under the Civil False Claims Act with
particularity."  <u>Id.</u> at 11.  While this might conceivably have been a defense to be raised by a
motion to dismiss five years ago, it is irrelevant now that liability has already been decided on
summary judgment.

     Defendant, at the end of the day, offers nothing of substance to derail the damages-award
train now entering the station.

**III.    Conclusion**

The Court, accordingly, will issue a contemporaneous Order granting judgment in

Plaintiff's favor in the amount of $6,151,302.51.


/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date: September 23, 2016